David DeJOHN, Plaintiff,

v.

**THE .TV CORPORATION INT'L,
Register.com, Inc., and Verisign
Inc., Defendants.**

No. 02 C 4497.

United States District Court,
C.D. Illinois,
Eastern Division.

Jan. 16, 2003.

Brian Farley, Perkaus & Farley, LLC, for Plaintiff David DeJohn.

Mark V.B. Partridge, Bradley L. Cohn, Thad Chaloemtiarana and Nerissa Coyle McGinn, Pattishall, McAuliffe, Newbury, Hilliard & Geraldson, for Defendants Veri-

sign and the .TV Corporation International.

Matthew R. Kipp and Donna L. McDevitt, Skadden, Arps, Slate, Meagher & Flom, for Defendant Register.com.

## *MEMORANDUM AND ORDER*

MANNING, District Judge.

Plaintiff David DeJohn ("DeJohn") tried to purchase certain domain names for $50 each from defendant The .TVCorporation, International (".TV") by going though defendant Register.com, Inc. ("Register.com"), which is a domain name registrar. A "domain name" is another term for an internet address, and a "domain name registrar" is an entity that sponsors domain name applications. When virtually all of his applications were rejected by .TV because the $50 price listed by Register.com was too low, DeJohn sued Register.com, .TV, and .TV's parent, defendant VeriSign, Inc. ("VeriSign"). In his three count complaint, DeJohn claims that all of the defendants breached a contract (Count I), violated the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS § 505/1, *et seq.* (Count II), and violated the Uniform Deceptive Trade Practices Act, 815 ILCS Act 510 (Count III).[1]

The defendants seek to dismiss this action for failure to state a claim for which relief can be granted pursuant to Fed. R.Civ.P. 12(b)(6) and for improper venue pursuant to Fed.R.Civ.P. 12(b)(3). For the following reasons, Register.com's motion to dismiss Count I for lack of venue is granted and its motion to dismiss Counts II and III for failure to state a claim is granted. The portions of Counts I, II, and III directed at .TV and VeriSign are dis-

missed in their entirety for failure to state a claim.

## I. Background

DeJohn is an Illinois citizen. Register.com is a Delaware corporation with its principal place of business in New York, .TV, is a Delaware corporation with its principal place of business in California, and VeriSign is a Delaware corporation with its principal place of business in California. Because over $75,000 is at issue, diversity jurisdiction is proper under 28 U.S.C. § 1332.

Defendant Register.com is an Internet domain name registrar. Defendant .TV, a wholly owned subsidiary of defendant VeriSign, is the administrator of the ".tv" top level domain name registry. .TV receives registration applications from independent domain names registrars, including Register.com. If an application complies with .TV's requirements, .TV enters it into the ".tv" registry. If the application fails to comply, .TV rejects it and returns it to the domain name registrar.

DeJohn submitted applications to .TV via Register.com's website in an attempt to register the domain names "www.business.tv," "www.wallstreet.tv," "www.x.tv," "www.realtor.tv," "www.sex.tv," and "www.mayberry.tv." DeJohn tendered payment of the $50 advertised price for each domain name he requested. As a condition precedent to submitting each of the applications, DeJohn was required to enter into a Services Agreement with Register.com (the "Register.com Agreement"). The electronic format of the contract required DeJohn to click on a box indicating hat he had read, understood, and agreed to the terms of the contract in order to accept its provisions and obtain the registra-

---

1. DeJohn's complaint also contained a fourth count requesting temporary, preliminary and permanent injunctive relief plus declaratory and monetary relief. DeJohn voluntarily withdrew this count.

tion or reject the provisions and cancel the application. This type of online contract is known as a click-wrap. *See Specht v. Netscape Comms. Corp.*, 306 F.3d 17, 22 (2d Cir.2002) (a click-wrap agreement "presents the user with a message on his or her computer screen, requiring that the user manifest his or her assent to the terms of the ... agreement by clicking on an icon. The product cannot be obtained or used unless and until the icon is clicked.").

The actual text of the Register.com Agreement was provided through a hyperlink available directly above the box.[2] One of the contract provisions required DeJohn to acknowledge and agree that Register.com could not guarantee registration or renewal of a desired domain name. The contract also included a choice of law

clause which stated that New York law would govern any dispute arising under the contract, as well as a forum selection clause requiring any suit arising from the contract to be brought in the Southern District of New York.[3]

As a term and condition of the Register.com Agreement, DeJohn was also required to agree to the terms of the .TV Registration and Services Agreement (".TV Agreement"), which was incorporated by reference.[4] The .TV Agreement contained a choice of law clause indicating that California law would apply to any dispute under the contract and a forum selection clause requiring any suit arising from the contract to be brought in a federal or state court in Los Angeles, California.[5]

2. The Register.com Agreement that was incorporated into the click-wrap agreement is not attached to DeJohn's complaint. Generally, in deciding a motion to dismiss under Rule 12(b)(6), the court is limited to the four corners of the complaint. *See Carter v. Stanton*, 405 U.S. 669, 671, 92 S.Ct. 1232, 31 L.Ed.2d 569 (1972). However, the Seventh Circuit has recognized a narrow exception to this rule: where a complaint or an attachment to the complaint expressly refers to another document, such as a contract, the court can consider the referenced contract. *See 188 LLC v. Trinity Industries, Inc.*, 300 F.3d 730, 735 (7th Cir.2002). "The purpose of the exception is to prevent parties from surviving a motion to dismiss by artful pleading or by failing to attach relevant documents." *Id.* Here, DeJohn specifically alleges that he entered into an agreement with the defendants to register certain domain names and in fact registered those names. Complaint at ¶¶ 1, 10, 22. The only logical reading of these allegations and the complaint as whole is that DeJohn clicked on the click wrap agreement, which incorporated the Register.com Agreement. Thus, the court will consider the Register.com Agreement in connection with the motion to dismiss.

3. The choice of law provision of the Register.com Agreement provided that an applicant's "rights and obligations and all actions

contemplated by [the Agreement] shall be governed by the laws of the United States of America and the State of New York, as if the Agreement was a contract wholly entered into and wholly performed within the State of New York." In addition, the Agreement provided that, "with respect to any dispute over [the applicant's] domain name registration, any action to enforce [the Agreement] or any matter relating to ... use of the Register.com site shall be brought exclusively in the United States District Court for the Southern District of New York, or if there is no jurisdiction in such court, then in a state court in New York County."

4. Because the Register.com Agreement incorporated the .TV Agreement, the court may consider that agreement in connection with a Rule 12(b)(6) motion to dismiss. *See infra* at n.2.

5. The choice of law provision in the .TV Registration and Services Agreement stated that the contract was "governed by the laws of the State of California." Additionally, the Agreement provided that an applicant consents "to the exclusive jurisdiction of the federal or state court in Los Angeles County, California ... for any and all claims or disputes against" .TV and that the applicant waives "any right to object to venue or jurisdiction based on inconvenient forum ...."

Shortly after DeJohn submitted his applications, Register.com sent him e-mail messages indicating that he had successfully registered the requested domain names. These messages were sent in error, as Register.com was unable to register five of the six domain names requested by DeJohn for $50 each. Specifically, when .TV received DeJohn's domain name applications from Register.com, .TV accepted the "www.mayberry.tv" application, but rejected the remaining applications because the registration fees for those domain names were actually significantly higher than $50.

Upon receiving notice of the rejections from .TV, and within 72 hours of DeJohn's submission of his applications, Register.com notified DeJohn that his applications were unsuccessful and refunded his money. Prior to the events giving rise to this dispute, DeJohn had requested and successfully registered several Internet domain names through Register.com.

## II. Discussion

Each of the defendants has filed a separate motion to dismiss. The court will consider them in turn.

### A. Register.com's Motions to Dismiss

DeJohn asserts that an implied contract was created when Register .com accepted his offer to register the domain names at $50 each. He contends that this implied contract—not the Register.com Agreement—governs his relationship with Register.com. He then argues that Register.com breached this implied contract when it failed to register the requested domain names. Although he maintains that the Register.com Agreement is not applicable, DeJohn alternatively argues that the Register.com Agreement is, in any event, unenforceable.

On the other hand, Register.com maintains that the Register.com Agreement became effective when DeJohn clicked the box on its website indicating that he read, understood and agreed to its terms. Thus, Register.com argues that the written Register.com Agreement, and not any alleged implied contract, governs its relationship with DeJohn. Register.com also asserts that, even if some sort of an implied contract existed, it does not supercede the written Register .com Agreement because the Register.com Agreement contains an integration clause.

Since DeJohn has not alleged a breach of the actual Register.com Agreement itself, Register.com contends that his breach of contract claim fails to state a claim upon which relief may be granted. In addition, Register.com asserts that the claims against it should proceed in the Southern District of New York pursuant to the contract's forum selection clause and thus moves for dismissal under Fed.R.Civ.P. 12(b)(3) based on improper venue.

### 1. Choice of Law

■ Before the court can address the merits of these arguments, it must first determine what law governs this diversity action. According to Register.com, New York law applies because the Register .com Agreement contained a binding choice of law clause.[6] DeJohn argues that

---

**6.** Register.com has complicated matters by failing to raise a choice of law issue as to the breach of contract claim in Count I. Instead, it cites Illinois law without comment in support of its motion to dismiss that count. Ordinarily, when the parties do not specifically discuss the choice of law, courts apply the law of the forum state. *See Kritikos v. Palmer Johnson, Inc.,* 821 F.2d 418, 421 (7th Cir. 1987); *see also Merrill Lynch Interfunding, Inc. v. Argenti,* 155 F.3d 113, 121 (2d Cir. 1998). Register.com, however, did expressly

choice of law in the contract must yield to the law of the forum state, and relies exclusively on Illinois law to support his claims.

In a diversity case, a federal court must follow the conflict of laws principle of the state in which it sits. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496–97, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *see also Gramercy Mills, Inc. v. Wolens*, 63 F.3d 569, 572 (7th Cir.1995) (holding that a forum state's choice of law rules determine what substantive law applies to state law claims). In Illinois, where the parties contract for a specific substantive law to govern a dispute, Illinois law respects the choice of law provision if the contract is valid. *See Kohler v. Leslie Hindman, Inc.*, 80 F.3d 1181, 1185 (7th Cir.1996). As discussed in detail below, the court finds that the Register.com Agreement is valid. Accordingly, the court will apply New York substantive law to the claims against Register.com.

### 2. Existence of an Implied Contract

■ DeJohn asserts that Register.com violated an implied duty of good faith and fair dealing. As noted above, DeJohn argues that an implied contract to this effect was created when Register.com accepted his domain name registration applications. Register.com maintains, however, that when DeJohn submitted the five domain name applications at issue in this case, he agreed to be bound solely by the terms of the Register.com Agreement.

In general, where the language of a contract is clear and unambiguous, the terms of the agreement are used to determine the parties' intent. *See Martin v. Glenzan Assoc., Inc.*, 75 A.D.2d 660, 426 N.Y.S.2d 347, 348 (N.Y.App.Div.1980).

The existence of an enforceable contract governing a particular transaction precludes recovery under an implied contract related to the same transaction. *See Moore v. Microsoft Corp.*, 293 A.D.2d 587, 741 N.Y.S.2d 91, 92 (N.Y.App.Div.2002). Here, any implied contract between DeJohn and Register.com is negated by DeJohn's clear agreement to be bound by the written Register.com Agreement.

In addition, the contract expressly provides that it is the "exclusive agreement" between the parties which could not be modified by DeJohn "except by means of a written document signed by both [DeJohn] and an authorized representative of Register.com." As no such document was ever executed, DeJohn's implied contract argument fails.

### 3. Validity of the Register.com Agreement

DeJohn argues that even if the Register.com Agreement is applicable, it is unenforceable because: (1) its terms are ambiguous; (2) its text is not displayed unless the applicant clicks on the hyperlink provided; (3) it is an unconscionable adhesion contract; (4) it is inconsistent with the .TV Agreement, so both contracts are invalid; (5) DeJohn's claims at issue are outside its scope; and (6) it is invalid because Register.com failed to attach a copy of it to its application confirmation e-mails. The court disagrees.

#### a. Ambiguous Terms

■ The court will address DeJohn's first two arguments together. According to DeJohn, the terms of the Register.com Agreement are ambiguous, and this problem is exacerbated by Regis-

---

raise a choice of law issue in connection with its motion to dismiss the Illinois state law claims in Counts II and III. The court will

presume that it wanted this choice of law argument to apply to the entire complaint.

ter.com's failure to provide the actual text of the contract during the application process. DeJohn did not raise either of these claims in his complaint, and it is well established that a plaintiff may not amend his complaint in response to a motion to dismiss. *See, e.g., Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1107 (7th Cir.1984).

In any event, these claims fail because DeJohn had an opportunity to review the terms of the Register.com Agreement by clicking on the hyperlink Register.com provided. The fact that DeJohn claims that he did not read the contract is irrelevant because absent fraud (not alleged here), failure to read a contract is not a get out of jail free card. *See Tatar v. Elite Gold, Inc.,* No. 01 CIV. 2433(RLC), 2002 WL 2031605 at *3 (S.D.N.Y. Sept.5, 2002) ("If the signer could read the instrument, not to have read it was gross negligence; if he could not read it, not to procure it to be read was equally negligent; in either case the writing binds him."). This same rule applies to electronic contracts. *See Barnett v. Network Solutions, Inc.,* 38 S.W.3d 200, 204 (Tex.App.2001) (reasoning that parties to an electronic contract, like parties to a written contract, are not excused from the ramifications of failure to read a contract). Thus, DeJohn's ambiguity arguments are unavailing.

### b. Adhesion Contract

■ DeJohn next argues that the Register.com Agreement is an unconscionable adhesion contract because it did not result from arm's length bargaining and was an inherently unfair boilerplate agreement. New York law, however, presumes that a written agreement is valid and reflects the parties' intentions. *See, e.g.,Klos v. Polskie Linie Lotnicze,* 133 F.3d 164, 168 (2d Cir.1997). Thus, it is very difficult to es-

tablish that an agreement is an unenforceable adhesion contract. *Id.*

An adhesion contract exists where: (1) the drafter uses "high pressure tactics" or "deceptive language" in the contract; and (2) the inequality of bargaining power between the parties results in significant unfairness to the weaker party. *Aviall, Inc.,* 913 F.Supp. at 831. A contract is significantly unfair only if its terms are oppressive, unconscionable, contrary to public policy or not within the reasonable expectations of the weaker party. *Id.; see also Klos,* 133 F.3d at 169.

In this case, the contract between Register.com and DeJohn is not an unenforceable adhesion contract. DeJohn does not contend that Register.com used high-pressure tactics or deceptive language to induce him to click on the "I agree" button. Instead, he argues merely that Register.com's superior bargaining power left him with no choice but to agree to the dictated terms of the agreement without negotiation. As noted above, however, it is the unfair use of, not the mere existence of, unequal bargaining power that is determinative. Although it is true that the terms of the contract were dictated solely by Register.com, DeJohn expressly indicated that he read, understood and agreed to those terms when he clicked the box on Register.com's website. Moreover, DeJohn has always had the option to reject Register.com's contract and obtain domain name registration services elsewhere. *See Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 595, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991) (upholding a preprinted forum selection clause in part because the plaintiff "retained the option of rejecting the contract with impunity"). DeJohn cannot get out of the contract now simply because he regrets his decision. Accordingly, the court finds that the Register.com Agreement is a valid and enforceable contract.

#### c. Inconsistency

■ In support of his claim that the Register.com Agreement conflicts with the .TV Agreement, DeJohn notes that Register.com's choice of New York law means that it irreparably conflicts with the choice of California law provision in the .TV contract. In its brief, .TV offers to solve this problem by stipulating to the use of New York law. Although the court appreciates .TV's efforts to simplify the choice of law issue, a party may not unilaterally change the terms of the contract for ease of subsequent litigation. Nevertheless, the conflict is not enough to jettison the entire Register.com contract since the court can easily apply New York law to disputes about the Register.com contract and apply California law to disputes about the .TV contract.

#### d. Scope of the Contract

■ Next, DeJohn argues that the Register.com Agreement is inapplicable because Register.com's allegedly wrongful acts fell outside the scope of the contract. The Register.com Agreement encompasses "any errors, omissions or any other actions by any registry administrator arising out of or related to [an] application for and registration of, renewal of, or failure to register or renew a particular domain name." In addition, the contract provides that "Register.com cannot guarantee that [an applicant] will be able to register or renew a desired domain name, even if an inquiry indicates that domain name is available, since Register.com cannot know with certainty ... whether there are inaccuracies or errors in the ... registration or renewal process." The plain language of the contract shows that Register.com expressly reserved the right to refuse to process a domain name application in the event of an error, including an error as to

price. Therefore, DeJohn's claims plainly fall within the scope of the contract.

#### e. Negation

■ DeJohn admits that the Register.com Agreement expressly provides that it supercedes all prior agreements, but argues that it does not address subsequent agreements between the parties. He notes that the Register.com's e-mail confirmation messages indicated that a copy of the Register.com Agreement was attached, but that Register.com failed to attach the agreement. Thus, DeJohn reasons that a "blank agreement" negated the Register.com Agreement so, in fact, there is no contract. This is a creative but unsuccessful argument. The Register.com Agreement plainly states that it "may not be modified ... except by means of a written document" signed by both parties. Since DeJohn has not alleged that such a written document exists, the Register.com Agreement is valid as it stands.

### 4. Breach of Contract

Having concluded that the Register.com Agreement is a valid contract, the court next considers Register.com's motions to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6) and for improper venue under Fed.R.Civ.P. 12(b)(3). Because venue is a threshold question, the court will begin with it.

#### a. Standard Applicable to a Rule 12(b)(3) Motion to Dismiss

■ On a motion to dismiss for improper venue based on a forum-selection clause, the plaintiff bears the burden of establishing that the venue he has chosen is proper and that the forum-selection clause is unenforceable. *See Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1, 18, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972); *V.R.S. Inds. v. B.H.P.C. Marketing,* No. 01 CIV.

0570(LMM), 2001 WL 1297809 at *2 (S.D.N.Y. Oct.25, 2001). The court must resolve any factual disputes in favor of the plaintiff and draw any reasonable inferences from those facts in the plaintiff's favor. *V.R.S. Ind.*, 2001 WL 1297809 at *2. It may also consider evidence outside the four corners of the complaint. *See id.; Jockey Int'l, Inc. v. M/V "Leverkusen Express"*, 217 F.Supp.2d 447, 450–51 (S.D.N.Y.2002).

b. Forum Selection Clause

Register.com contends that venue in Illinois is improper based on the forum selection clause in the Register.com Agreement. For a forum selection clause to be effective, the language delineating the choice of forum must be "mandatory rather than permissive." *See Jockey Int'l, Inc.*, 217 F.Supp.2d at 451. Mandatory forum selection clauses are presumptively valid and must be enforced unless it is unreasonable under the circumstances. *Bremen*, 407 U.S. at 15, 92 S.Ct. 1907; *V.R.S. Inds.*, 2001 WL 1297809 at *2. DeJohn concedes that the forum selection clause in the Register.com Agreement is mandatory and exclusive.

A party seeking to avoid a mandatory clause must show that: (1) it is the result of fraud or overreaching; (2) the party will be deprived of his day in court as the result of the "grave inconvenience or unfairness of the selected forum"; (3) the party may be deprived of a remedy due to the "fundamental unfairness" of the chosen law; or (4) the clause contravenes a strong public policy of the forum state. *Roby v. Corporation of Lloyd's*, 996 F.2d 1353, 1363 (2d Cir.1993). DeJohn does not invoke any of these factors. Indeed, his complaint and pleadings do not argue that the clause is the result of fraud, New York is inconvenient, or New York law is fundamentally unfair.

Absent evidence of these factors, a forum selection clause is presumptively valid. *See id.* The fact that the contract is electronic does not affect this conclusion. *See Forrest v. Verizon Comms., Inc.*, 805 A.2d 1007, 1014 (D.C.App.Ct.2002) (upholding forum selection clause in an Internet click-wrap agreement); *Barnett*, 38 S.W.3d at 203–04 (upholding forum selection clause in online contract for registration of Internet domain names which required users to scroll through terms before accepting or rejecting them); *Caspi v. Microsoft Network, L.L.C.*, 323 N.J.Super. 118, 732 A.2d 528, 530, 532–33 (App.Div. 1999) (upholding forum selection clause where online software users were required to review license terms in scrollable window and click "I Agree" or "I Don't Agree").

Because the contract is valid and the forum selection clause is enforceable, venue in this judicial district is not proper. When a case is brought in a district in which venue does not lie, the court may dismiss it or transfer the case to any district or division in which it could have been brought. 28 U.S.C. § 1406(a). The decision to dismiss or transfer the case is within the court's discretion. *See Standing Stone Media, Inc. v. Indiancountrytoday.com*, 193 F.Supp.2d 528, 536 (N.D.N.Y.2002).

Because the court can readily address the merits of the other counts directed at the defendants and has already familiarized itself with them, it will further judicial efficiency for this court to resolve those claims now instead of transferring this entire matter to New York. Accordingly, Register.com's motion to dismiss Count I (breach of contract) for lack of venue pursuant to Rule 12(b)(3) is granted without prejudice to refiling it in the Southern District of New York. The court will thus not consider Register.com's alternative

motion to dismiss this count for failure to state a claim upon which relief may be granted.

### 5. Illinois State Law Claims

■ Counts II and III of DeJohn's complaint are based on Illinois law. Specifically, DeJohn seeks damages for violations of the Illinois Consumer Fraud and Deceptive Practices Act and the Uniform Deceptive Trade Practices Act, which has been adopted by Illinois, Delaware, Maine, and Oklahoma. *See* 815 ILCS §§ 510/1 to 510/7 (Illinois); 6 Del.C. §§ 2531 to 2536 (Delaware); 10 M.R.S.A. §§ 1211 to 1216 (Maine); 78 Okl.St.Ann. §§ 51 to 55 (Oklahoma). DeJohn asserts that Register.com engaged in deceptive acts by falsely offering and advertising the registration and sale of Internet domain names. In addition, DeJohn argues that Register.com's actions caused confusion and misunderstanding amounting to deceptive trade practices.

In response, Register.com argues that DeJohn's claims under Illinois state law fail because the contract specified that New York law governed any disputes arising from the contract. When a contract contains a choice of law provision, the law of the state chosen by the parties will be applied to any issue which the parties could have resolved by an explicit provision in their contract. *See Scientific Holding Co. v. Plessey Inc.*, 510 F.2d 15, 22 (2d Cir.1974), *citing* Restatement (Second) of Conflict of Laws § 187 (1971). Here, the parties agreed that New York law would govern any dispute arising under the Register.com Agreement. Although the contract does not explicitly say that New York law will apply to a fraud or deceptive practices act claim, such a provision could have been included. Accordingly, the court will respect the parties' choice of New York law. This means that DeJohn cannot pursue claims based on non-New York law, so the portions of Counts II and III directed at Register.com must be dismissed pursuant to Rule 12(b)(6).

### B..TV's Motion to Dismiss

.TV seeks to dismiss counts I, II, and III of the complaint pursuant to Fed. R.Civ.P. 12(b)(6) and Fed.R.Civ.P. 12(b)(3).

#### 1. Choice of Law & Venue

Illinois law applies to DeJohn's claims against .TV because neither party has argued otherwise and the parties rely exclusively on Illinois law. *See Burdett v. Miller*, 957 F.2d 1375, 1382 (7th Cir.1992). The court can thus potentially consider venue or the merits. "[F]ederal venue principles, which are statutory and judicially created, not constitutional, have been designed to insure that litigation is lodged in a convenient forum and to protect the defendant against the possibility that the plaintiff will select an arbitrary place in which to bring suit." C. Wright & A. Miller, 4 *Federal Practice & Procedure Civ.3d* § 1063 (3d ed.2002). Because Illinois law governs the dispute between DeJohn and .TV and .TV has filed a motion to dismiss under Rule 12(b)(6), the court will determine whether, under Illinois law, DeJohn has sufficiently stated claims upon which relief may be granted.

#### 2. Standard Applicable to a Rule 12(b)(6) Motion to Dismiss

■ The purpose of a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) is to evaluate the sufficiency of the complaint, not to determine whether the plaintiff will ultimately prevail on the merits, so the court should not dismiss a claim unless it is clear that plaintiff can prove no set of facts in support of his allegations that would entitle him to relief. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104

S.Ct. 2229, 81 L.Ed.2d 59 (1984). In this respect, the court must presume the well-pleaded allegations of the complaint as true and draw all reasonable inferences in the light most favorable to the plaintiff. *Perkins v. Silverstein*, 939 F.2d 463, 466 (7th Cir.1991).

However, a plaintiff must allege sufficient facts in the complaint to satisfy the elements for a cause of action. *See Glatt v. Chicago Park Dist.*, 847 F.Supp. 101, 103 (N.D.Ill.1994). Further, this court is not required to ignore facts set forth in the complaint that undermine the plaintiff's claim or accept unsupported legal conclusions. *See Scott v. O'Grady*, 975 F.2d 366, 368 (7th Cir.1992). The complaint must contain either direct or inferential allegations concerning all material elements necessary to recover under the chosen legal theory. *See Glatt*, 847 F.Supp. at 103.

### 3. Breach of Contract

The court has already concluded that the Register.com Agreement was a valid and enforceable contract. That contract expressly incorporated the .TV Agreement by reference. Thus, the .TV Agreement is part of the Register.com Agreement and can potentially bind the parties.

According to .TV, DeJohn cannot get his domain names for $50 each because the .TV Agreement explicitly provided that the contract is "not effective until accepted by us. We may accept or reject this Agreement for any reason, in our sole discretion." Pursuant to the terms of the Agreement, "acceptance" means "registration of the domain name in .TV's registry or e-mail registration confirmation from .TV. The right to reject registration of a particular domain name is retained by .TV for thirty (30) days from receipt of payment."

The court agrees with .TV that this language dooms DeJohn's breach of contract claims against .TV. The .TV Agreement became effective when DeJohn agreed to the Register.com Agreement. The express terms of the .TV Agreement plainly gave .TV the right to reject DeJohn's application. There is no dispute that .TV exercised that option in accordance with the contract. Thus, DeJohn cannot show that .TV breached the contract.

In an effort to get around the contract's clear language, DeJohn claims that there was an implied contract requiring .TV to give him the domain names at the price listed by Register.com. Even if the .TV Agreement was inapplicable—which is not the case—the elements of an implied contract do not exist here. .TV did not offer to register the requested domain names at the fees listed on the Register.com website. At best, DeJohn made an offer, which .TV promptly rejected. A contract, express or implied, requires an offer and acceptance, meeting of the minds, and payment of consideration. *Anheuser–Busch, Inc. v. Beer, Soft Drink, Water*, 280 F.3d 1133, 1136 (7th Cir.2002). A mere offer is never sufficient to establish a contract. *See id.* Accordingly, the breach of contract claim against .TV is dismissed with prejudice pursuant to Rule 12(b)(6).

### 4. Agency

██ In his brief opposing .TV's motion to dismiss, DeJohn for the first time argues that Register.com is .TV's apparent agent. On this basis, he seeks to hold .TV responsible for Register.com's actions. A party may not amend his complaint in a brief in opposition to a motion to dismiss. *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d at 1107. Nevertheless, the court will address this argument in the interests of completeness.

The plain language of the .TV Agreement directly contradicts any inference

that .TV meant to give Register.com the authority to enter into a contract on its behalf. To read the contract in the strained way suggested by DeJohn would require the court to ignore large chunks of unambiguous contractual language. In addition, .TV did not accept any benefits of the contract between DeJohn and Register.com. Instead, .TV promptly rejected the domain name applications submitted by Register.com. Thus, DeJohn could not have reasonably believed that Register.com had any authority to bind .TV. Accordingly, DeJohn's agency claim is dismissed with prejudice.

### 5. Illinois State Law Claims

In Counts II and III, DeJohn seeks damages for violations of the Illinois Consumer Fraud and Deceptive Practices Act and the Uniform Deceptive Trade Practices Act. .TV argues that DeJohn is not protected by the Illinois Consumer Fraud and Deceptive Practices Act because he is not a "consumer" under the statute. In addition, .TV asserts that DeJohn failed to allege that .TV engaged in any deceptive conduct.

#### a. Illinois Consumer Fraud and Deceptive Practices Act

■ The Illinois Consumer Fraud and Deceptive Practices Act is primarily aimed at protecting consumers. *See* 815 ILCS § 505/1; *see also Stepan Co. v. Winter Panel Corp.,* 948 F.Supp. 802, 805 (N.D.Ill. 1996). Under the statute, the term "consumer" means "any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household." 815 ILCS § 505/1(e).

DeJohn concedes that the term "consumer" does not include persons who purchase merchandise for resale. Neverthe-less, he contends that his complaint did not allege that he intended to resell the domain names at issue in this case. The complaint belies this assertion, as it seeks damages in the form of "potential lost sales and profits." Complaint at ¶ 25. The court is not required to ignore facts in the complaint that undermine the plaintiff's claim. *See Scott v. O'Grady,* 975 F.2d at 368. The only logical way of reading the claim for damages based on potential lost sales is to construe it as a claim for damages based on potential lost sales of the domain names. DeJohn is thus not a consumer and lacks standing to pursue a claim based on the Illinois Consumer Fraud and Deceptive Practices Act.

In any event, even if DeJohn was somehow protected by the statute, he still cannot prevail. The alleged deception was the advertising of domain names to consumers for an incorrect price. To the extent that the advertising was incorrect, it was done by Register.com, not .TV. DeJohn has not alleged that .TV advertised the domain names at $50 each, and any such allegation would be at odds with the fact that DeJohn was attempting to purchase the names through an Internet domain name registrar, not .TV directly. Thus, DeJohn's claim against .TV for violation of the Illinois Consumer Fraud and Deceptive Practices Act is dismissed with prejudice.

#### b. Uniform Deceptive Trade Practices Act

■ In his complaint, DeJohn alleges that he was confused when he received confirmation that he had registered the requested domain names but then was notified that his attempt to register those names was unsuccessful. In addition, he argues that the error regarding the price of the domain names added to his confusion. The problem with these arguments

is that they are directed at the wrong defendant.

The Uniform Deceptive Trade Practices Act requires a plaintiff to do more than merely allege that he was confused. 815 ILCS § 510/2. Instead, he must allege that the defendant committed a false or deceptive act. *Id.* The complaint's allegations indicate that Register.com, not .TV, engaged in the conduct that led to De-John's alleged confusion. Accordingly, DeJohn cannot state a claim against .TV under the Uniform Deceptive Trade Practices Act and this count is dismissed with prejudice pursuant to Fed.R.Civ.P. 12(b)(6).

### C. VeriSign's Motion to Dismiss

As with .TV, Illinois law applies to De-John's claims against VeriSign because neither party has argued otherwise and the parties rely exclusively on Illinois law. *See Burdett v. Miller,* 957 F.2d at 1382. VeriSign is the parent corporation of .TV, and otherwise is not involved in the events at issue in this case. DeJohn's claims against VeriSign thus cannot proceed unless he can pierce the corporate veil.

Generally, a parent corporation is an autonomous entity and is not liable for the acts of its subsidiaries. *See U.S. v. Best-foods,* 524 U.S. 51, 61, 118 S.Ct. 1876, 141 L.Ed.2d 43 (1998). This is because a it is a legal entity separate and distinct from its shareholders, directors and officers and other corporations with which it may be affiliated. *See Dimmitt & Owens Fin., Inc. v. Superior Sports Prod., Inc.,* 196 F.Supp.2d 731, 738 (N.D.Ill.2002). However, a plaintiff can pierce the corporate veil if: (1) there is a unity of interest and ownership such that the separate personalities of the related parties no longer exist; and (2) the circumstances are such that adherence to the fiction of separate corpo-

rate existence would sanction a fraud or promote injustice. *Id.*

To determine whether a unity of interest between the entities exists, Illinois courts consider whether the corporations: (1) maintained adequate corporate records and complied with corporate formalities; (2) commingled funds or assets; (3) were undercapitalized; and (4) treated the assets of the other corporation as its own. *Id.; see also Pyshos v. Heart–Land Dev. Co.,* 258 Ill.App.3d 618, 623, 196 Ill.Dec. 889, 630 N.E.2d 1054 (1st Dist.1994). Under Illinois law, "[a]llegations concerning these elements must appear in a complaint to pierce the corporate veil." *Pyshos,* 258 Ill.App.3d at 623, 196 Ill.Dec. 889, 630 N.E.2d 1054.

The allegations in DeJohn's complaint do not show a unity of interest between VeriSign and .TV. DeJohn does not allege that he had any direct dealings with Veri-Sign. Instead, he merely identifies Veri-Sign as the corporate parent of .TV and concludes that VeriSign exerts operational control over the sale and distribution of .TV domain names. On this tenuous basis, DeJohn asserts that VeriSign is liable for breach of contract and violation of the Illinois Consumer Fraud and Deceptive Practices Act and the Uniform Deceptive Trade Practices Act.

Because the complaint does not contain any allegations subjecting VeriSign to potential liability other than the fact that it is .TV's parent, the claims against Veri-Sign cannot survive a motion to dismiss. In addition, any such claims would fail on the merits for the same reasons that De-John's claims against .TV failed. The claims against VeriSign are, therefore, dismissed with prejudice.

### III. Conclusion

For the reasons specified above, Register.com's motion to dismiss [11–1] is grant-

926

ed. Count I is dismissed for lack of venue, and Counts II and III are dismissed for failure to state a claim. The motion to dismiss filed by .TV and VeriSign [13–1] is granted in its entirety. The clerk is directed to enter a Rule 58 judgment and to terminate this case from the court's docket.