[Cite as *Ranazzi v. Amazon.com, Inc.*, 2015-Ohio-4411.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY


Andrew K. Ranazzi                                   Court of Appeals No. L-14-1217

    Appellant                                     Trial Court No. CVF-14-04661

v.

Amazon.Com, Inc., etc., et al.          **DECISION AND JUDGMENT**

    Appellee                                       Decided:  October 23, 2015

* * * * *

Andrew K. Ranazzi, pro se.

Christine E. Mayle, for appellee.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} Appellant, Andrew Ranazzi, appeals the September 23, 2014 judgment of the Toledo Municipal Court which granted appellees Amazon.com, Inc. and Intuit Payments, Inc.'s motion to stay the action pending arbitration.  Because we find that the court did not err, we affirm.

{¶ 2} The undisputed facts are as follows. Appellant purchased Intuit's 2013 Turbo Tax Deluxe program and completed his federal income taxes using the software; the taxes were filed in March 2014. As an incentive, Intuit offered its customers through its "TurboTax Bonus Refund Program" the option of converting part of their income tax refund to Amazon eGift Cards, with a 10 percent bonus provided by Intuit. According to appellant, he initially contacted Amazon to confirm that he could use the cards "to purchase what Amazon.com sold." Appellant then opted to convert a portion of his tax refund and on April 9, 2014, two Amazon eGift Cards were deposited into his Amazon account: $2100, represented his tax return funds and $210, represented the bonus sum.

{¶ 3} Immediately after the sums were added to his account, appellant attempted to use the funds to purchase Amazon gift cards in smaller denominations. Appellant claims that he then learned that the Intuit-sponsored Amazon eGift Cards could not be used to purchase other Amazon gift cards. At that point, appellant attempted to rescind the offer and was told that he could not.

{¶ 4} Appellant commenced this action on April 10, 2014, alleging violations of the Ohio Consumer Sales Practices Act, R.C. Chapter 1345, and the Ohio Deceptive Trade Practices Act. Appellant alleged that he was never informed of the limitations on the use of the gift cards and that he was fraudulently refused a credit when the restrictions were discovered.

{¶ 5} On June 13, 2014, appellees filed a motion to dismiss pursuant to Civ.R. 12(B)(6) or, alternatively, a motion to stay the proceedings pending arbitration.

2.

Specifically, as to the motion to stay, appellees alleged that both Amazon and Intuit had arbitration agreements to which appellant agreed in contracting with the parties. Appellees stated that appellant, when contracting with Intuit for the TurboTax software, agreed to arbitrate any dispute or claim related to the services. Further, when appellant opened an Amazon.com account he agreed to arbitrate any disputes; also, each time he made a purchase on Amazon.com he agreed to the conditions of use. Appellees argued that these "clickwrap" agreements (agreements where you "click through" on a computer to assent to various terms) were valid and enforceable under law.[1] Appellees contended that the issue in dispute, whether appellant was deceived in regard to Intuit's Amazon eCard tax refund program, fell within the scope of the arbitration clause. In support of the motion to stay, appellees attached the affidavits of an Intuit employee and an Amazon employee with knowledge of their respective arbitration clauses.

{¶ 6} Appellant filed a motion to stay appellant's motion to dismiss pending discovery and a request to convert the motion to a Civ.R. 56 motion for summary judgment. Appellant argued that he should be permitted to conduct discovery to determine the merits of his claim and appellees' defenses. Appellant further contended that it was fundamentally unfair that appellees attached multiple exhibits and affidavits to their motion to dismiss where the claim is based on review of the four corners of the complaint.

---

[1] Intuit's license agreement is more accurately termed a scrollwrap agreement where the consumer has the opportunity to read the terms presented in a scroll box.

3.

**{¶ 7}** On September 23, 2014, the trial court granted appellees' motion to stay the matter pending arbitration. The court found that appellant, by opening the Amazon account, agreed to the conditions of use which contained an arbitration clause. Further, when purchasing the Intuit software, he agreed to resolve any disputes by arbitration by agreeing to the user agreement. The court concluded that the dispute was within in the scope of the arbitration clauses and that they were not unconscionable. This appeal followed.

**{¶ 8}** Appellant now raises the following five assignments of error:

I. It was error for the trial court to grant defendants-appellees' motion to compel arbitration and to dismiss or stay proceedings where the arbitration provisions were contained in agreements plaintiff-appellant may have never seen or to which agreed.

II. The trial court erred in granting defendants-appellees' motion to compel arbitration and to dismiss or stay proceedings where the arbitration provisions violate public policy by prohibiting class actions thus insulating defendants-appellees from their statutory obligations.

III. The trial court erred in granting defendants-appellees' motion to compel arbitration and to dismiss or stay proceedings where the arbitration provisions were unconscionable because they were offered on a take-it-or-leave-it basis, were one-sided in favor of defendants-appellees, and precluded class relief.

IV. The trial court erred in granting defendants-appellees' motion to compel arbitration and to dismiss or stay proceedings where no consideration existed for the execution of the arbitration provisions.

V. The trial court erred in granting defendants-appellees' [sic] where plaintiff-appellant's claims could be decided without referring to any contract containing the arbitration provisions.

{¶ 9} We initially note that appellate review regarding a motion to stay proceedings pending arbitration is for an abuse of discretion. *Construction Technologies, LLC v. Southbridge Housing Partners LP*, 6th Dist. Lucas No. L-06-1080, 2006-Ohio-6630, ¶ 7. However, review of a judgment regarding the unconscionability (a question of law) of an arbitration provision is reviewed de novo, but the trial court's factual findings will be accorded deference. *Hussein v. Hafner & Shugarman Ents., Inc.*, 176 Ohio App.3d 127, 2008-Ohio-1791, 890 N.E.2d 356, ¶ 22-23 (6th Dist.), citing *Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12. For ease of discussion, we will address appellant's assignments of error out of order.

## Arbitrability

{¶ 10} Arbitration is encouraged as a method of dispute resolution and a presumption favoring arbitration arises when the claim in dispute falls within the arbitration provision. *Hussein* at ¶ 24, citing *Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464, 471, 700 N.E.2d 859 (1998). This public policy favoring arbitration is codified in Ohio's Arbitration Act, R.C. Chapter 2711, which provides, in relevant part:

5.

If any action is brought upon any issue referable to arbitration under an agreement in writing for arbitration, the court in which the action is pending, upon being satisfied that the issue involved in the action is referable to arbitration under an agreement in writing for arbitration, shall on application of one of the parties stay the trial of the action until the arbitration of the issue has been had in accordance with the agreement, provided the applicant for the stay is not in default in proceeding with arbitration.  R.C. 2711.02(B).

{¶ 11} In his first assignment of error, appellant contends that he did not agree to arbitrate with either Intuit or Amazon.  Attached to appellees' motion to stay were affidavits from representatives of Intuit and Amazon which explained the customer registration process.  For both companies, prior to using their products or services, a customer must affirmatively accept the licensing terms or conditions of use.  Appellant does not dispute that he clicked through the relevant screens to manifest assent; rather, he argues that in order to get the full offer terms he would have had to click through multiple screens to ferret out the terms.

{¶ 12} Multiple courts have held that clicking is an acceptable method to manifest assent to the terms of an agreement.  *Hancock v. Am. Tel. and Tel. Co, Inc.*, 701 F.3d 1248, 1256 (10th Cir. 2012), citing *Smallwood v. NCsoft Corp.*, 730 F.Supp.2d 1213, 1226 (D.Haw. 2010).  *See also Segal v. Amazon.com, Inc.*, 763 F.Supp.2d 1367 (S.D.Fla.

6.

2011); *DeJohn v. The .TV Corp. Intern.*, 245 F.Supp.2d 913 (N.D.Ill. 2003); *Burcham v. Expedia, Inc.*, E.D. Missouri No. 4:07CV1963, 2009 WL 586513 (Mar. 6, 2009).

{¶ 13} Further, courts have upheld such agreements where the disputed terms were contained in a hyperlink. *Fteja v. Facebook, Inc.*, 841 F.Supp.2d 829 (S.D.N.Y. 2012). *See Nicosia v. Amazon.com, Inc.*, 84 F.Supp.3d 142 (E.D.N.Y. 2015) (upholding the arbitration clause and class action waiver the court noted that, at minimum, each time the plaintiff made a purchase on Amazon.com he was made aware of the conditions of use and that they were subject to change). This is so even where the user has failed to actually review the terms of use prior to manifesting assent. *Fteja* at 838. *See Swift v. Zynga Game Network, Inc.*, 805 F.Supp.2d 904, 910-912 (N.D.Cal. 2011) .

{¶ 14} Upon review of the facts of this case and the relevant case law, we find that appellant, by clicking "I agree" on Intuit's license agreement or by registering for an Amazon account and placing orders, accepted the terms of appellees' agreements, including the arbitration provisions.

{¶ 15} Appellant alternatively contends in his fifth assignment of error, that if he did, in fact, agree to arbitration, the dispute over the use of Amazon eCards does not fall under the scope of the arbitration clauses. Appellant's arbitration agreement with Intuit provides: "Any dispute or claim relating in any way to the Intuit software or this agreement will be resolved by binding arbitration, rather than in court."

{¶ 16} Similarly, appellant's agreement with Amazon provides:

7.

Any dispute or claim relating in any way to your use of any Amazon Service, or to any products or services sold or distributed by Amazon or through Amazon.com will be resolved by binding arbitration, rather than in court, except that you may assert claims in small claims court if your claims qualify. The Federal Arbitration Act and federal arbitration law apply to this agreement.

{¶ 17} In determining whether a dispute falls within the arbitration provision a court must first look at the language of the arbitration agreements. *Alexander v. Wells Fargo Financial Ohio 1, Inc.*, 122 Ohio St.3d 341, 2009-Ohio-2962, 911 N.E.2d 286, ¶ 9. Any doubts should be construed in favor of arbitration. *Hayes v. Oakridge Home*, 122 Ohio St.3d 63, 2009-Ohio-2054, 908 N.E.2d 408, ¶ 15, citing *Ignazio v. Clear Channel Broadcasting, Inc.*, 113 Ohio St.3d 276, 2007-Ohio-1947, 865 N.E.2d 18, ¶ 18.

"A proper method of analysis here is to ask if an action could be maintained without reference to the contract or relationship at issue. If it could, it is likely outside the scope of the arbitration agreement." *Fazio,* 340 F.3d at 395. Later in that paragraph, *Fazio* continued: "Even real torts can be covered by arbitration clauses '[i]f the allegations underlying the claims "touch matters" covered by the [agreement].' *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.,* 815 F.2d 840, 846 (2d Cir.1987)." (Brackets sic.) *Fazio,* id. *Alexander* at ¶ 24.

8.

{¶ 18} The contract terms regarding the bonus gift card program are central to the present dispute; thus, the action could not be maintained without reference to the "contract or relationship at issue." Accordingly, we find that the dispute is within the scope of the arbitration agreements. Appellant's first and fifth assignments of error are not well-taken.

{¶ 19} Appellant's fourth assignment of error contends that because there was no consideration for the agreement to arbitrate, it was not enforceable. Appellees dispute this assertion and further contend that the argument was not raised in the trial court and should not be considered on appeal.

{¶ 20} We agree that arguments generally may not be made for the first time on appeal. Indulging the claim, however, even a cursory review finds that it lacks merit. As to Intuit's license agreement, the affidavit in support of the motion to stay indicates that appellant during the installation process of the TurboTax software was required to click "I agree" to the license agreement. Appellant had the option of not continuing with the installation process. As to Amazon, appellant had the option of not creating an account or of terminating his account.

{¶ 21} Further, many courts have held that mutual promises to arbitrate is sufficient consideration for signing an arbitration agreement. *Price v. Taylor*, 575 F.Supp.2d 845, 853 (N.D.Ohio 2008). *See, generally, Bassett v. Electronic Arts, Inc.*, ___ F.Supp.3d ___, 2015 WL 1298632 (E.D.N.Y.). Appellant's fourth assignment of error is not well-taken.

9.

## Unconscionability

{¶ 22} Appellant, in his second and third assignments of error makes arguments relating to the unconscionability of the arbitration clauses. Appellant highlights the argument that the prohibition against class actions violates public policy. We note that appellant never raised the class action issue in the lower court

{¶ 23} Under Ohio law, [u]nconscionability includes both "'an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.'" *Hayes,* 122 Ohio St.3d 63, 2009-Ohio-2054, at ¶ 20, quoting *Lake Ridge Academy v. Carney*, 66 Ohio St.3d 376, 383, 613 N.E.2d 183 (1993). The party asserting unconscionability of a contract bears the burden of proving that the agreement is both procedurally and substantively unconscionable. *Id.* Procedural unconscionability refers to the formation of the contract and occurs when no voluntary meeting of the minds is possible. *Porpora v. Gatliff Bldg. Co.*, 160 Ohio App.3d 843, 2005-Ohio-2410, 828 N.E.2d 1081, ¶ 7 (9th Dist.). To determine whether an arbitration clause is procedurally unconscionable:

> "courts consider the relative bargaining positions of the parties, whether the terms of the provision were explained to the weaker party, and whether the party claiming that the provision is unconscionable was represented by counsel at the time the contract was executed." *Id.*

{¶ 24} In relation to the relative bargaining positions of the parties, the following factors must be considered:

"'age, education, intelligence, business acumen and experience, * *

* who drafted the contract, * * * whether alterations in the printed terms

were possible, [and] whether there were alternative sources of supply for

the goods in question.'" *Taylor,* 117 Ohio St.3d 352, 2008-Ohio-938, 884

N.E.2d 12, at ¶ 44, quoting *Collins v. Click Camera & Video,* 86 Ohio

App.3d 826, 834, 621 N.E.2d 1294 (2d Dist.1993).

{¶ 25} In determining whether a contract is substantively unconscionable, the

focus is on the terms of the agreement and whether they are commercially reasonable.

*Hayes* at ¶ 33.

Factors courts have considered in evaluating whether a contract is

substantively unconscionable include the fairness of the terms, the charge

for the service rendered, the standard in the industry, and the ability to

accurately predict the extent of future liability. John R. Davis Trust at ¶ 13;

Collins v. Click Camera, 86 Ohio App.3d at 834, 621 N.E.2d 1294. No

bright-line set of factors for determining substantive unconscionability has

been adopted by this court. The factors to be considered vary with the

content of the agreement at issue. Id.

{¶ 26} Appellant relies on *Eagle v. Fred Martin Motor Co.*, 157 Ohio App.3d 150,

2004-Ohio-829, 809 N.E.2d 1161 (9th Dist.), for his arguments regarding the

unconscionability of the arbitration clauses. In *Eagle*, the consumer purchased a new

vehicle from seller. Within two years and after several repair attempts, the vehicle

stopped running. *Id.* at ¶ 3. Eagle was presented with paperwork disclaiming all warranties; her signature was a condition of the seller fixing the vehicle. She refused to sign and had to purchase a replacement vehicle. *Id.* at ¶ 4.

{¶ 27} Eagle commenced an action for unfair and deceptive consumer sales practices and the seller filed a motion to stay the proceedings and compel arbitration. *Id.* at ¶ 5-6. The motion was granted and Eagle appealed the decision. On appeal, the court found that the arbitration clause was procedurally and substantively unconscionable. In reaching its decision as to substantive unconscionability, the court first noted that the filing cost of $750 and additional "large claim" fees were considerably higher than the costs associated with filing a common pleas' case. *Id.* at ¶ 38. They juxtaposed this fact with Eagle's $14,000-$21,000 yearly income and single-mother status. *Id.* at ¶ 45. The court then concluded that based on these costs alone, the arbitration clause was substantively unconscionable. *Id.* at ¶ 51.

{¶ 28} Turning to procedural unconscionability, the court noted that the arbitration clause was an adhesion contract and that a "huge disparity in bargaining power" existed between Eagle and the seller. Eagle did not even know what the term "arbitration" meant. Further, the court concluded that the confidentiality clause and class action proscription violated public policy. *Id.* at ¶ 61-74.

{¶ 29} Regarding substantive unconscionability, we note that appellant is an attorney who is certainly capable of interpreting contract language. The contracts were presented on a take-it-or-leave-it basis. And the materials at issue were available from

12.

alternate sources. Further, the arbitration clauses, unlike *Eagle*, lacked such onerous monetary burdens. The Amazon clause states that Amazon will reimburse all fees and costs for claims under $10,000 unless the arbitrator finds the claim frivolous. Further, the clause states that Amazon will not seek attorney fees or costs unless the claim is frivolous. Further, there is an option to proceed telephonically. The Intuit clause contains similar terms and additionally states that it will pay the filing fees if the consumer cannot afford to.

{¶ 30} As to whether the arbitration agreement was procedurally unconscionable we note that the agreement was standardized and, although appellant is an attorney, there was unequal bargaining power. However, courts have concluded that showing a one-sided contract is not enough to establish procedural unconscionability. *E.g., Vernon v. Qwest Communications, Internatl.*, Inc., 925 F.Supp.2d 1185 (D.Co. 2013).

{¶ 31} Appellant has failed to maintain a viable argument that the arbitration clauses are procedurally and substantively unconscionable. Appellant's third assignment of error is not well-taken.

{¶ 32} Finally, in appellant's second assignment of error he makes a public policy argument, citing *Eagle, supra*, regarding the inability to pursue a class action under the arbitration agreement. Decided after *Eagle*, the United States District Court for the Northern District of Ohio, applying Ohio law, found that a limitation of a consumer's legal remedies, including class actions, is not unconscionable unless it violates a consumer's statutory rights. *Price v. Taylor*, 575 F.Supp.2d 845, 854 (N.D.Ohio 2008).

13.

The court stated that "[a]n agreement does not violate a plaintiff's rights merely because it precludes a limited number of remedies." *Id.* *See AT & T Mobility LLC v. Concepcion*, 563 U.S. 333, 131 S.Ct. 1740, 179 L.Ed2d 742 (2011) (the FAA preempts California law regarding the unconscionability of class arbitration waivers).

{¶ 33} Based on the foregoing, we find that the arbitration agreements were not violative of public policy. Appellant's second assignment of error is not well-taken.

{¶ 34} On consideration whereof, we find that substantial justice was done the party complaining and the judgment of the Toledo Municipal Court is affirmed. Pursuant to App.R. 24, appellant is ordered to pay the costs of this appeal.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Mark L. Pietrykowski, J.          _____
                                                   JUDGE
Arlene Singer, J.          

Stephen A. Yarbrough, P.J.          _____
CONCUR.                                            JUDGE

                                  _____
                                                   JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.sconet.state.oh.us/rod/newpdf/?source=6.